UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CUPP,<br><br>          Plaintiff,<br><br>     v.<br><br>BASIL PLASTIRAS, et al.,<br><br>          Defendants. | Case No.  3:24-cv-03241-JSC<br><br>**ORDER RE: MOTION TO SET ASIDE DEFAULT**<br><br>Re: Dkt. No. 12 |

Plaintiff alleges Defendants' debt collection activities violated bankruptcy and consumer protection laws.  After Defendants failed to appear, Plaintiff moved for entry of default which the Clerk granted.  (Dkt. Nos. 6, 7.[1])  Plaintiff then moved for default judgment and a week later Defendants moved to set aside default based on improper service.  (Dkt. Nos. 11, 12.)  Having considered the parties' briefs, and having had the benefit of oral argument on August 15, 2024, as well as an evidentiary hearing on September 5, 2024, the Court in its discretion concludes there is good cause to set aside the default and GRANTS Defendants' motion.

## BACKGROUND

Plaintiff, who is representing himself, filed this action on May 30, 2024.  (Dkt. No. 1.)  Plaintiff's claims arise out of an action brought by Defendants against Plaintiff in Sonoma County Superior Court in 2007 and the subsequent monetary judgment issued in Defendants' favor.  (*Id*. at ¶¶ 13, 16.)  On June 3, 2024, Plaintiff filed proof of service of the summons and complaint representing process server Mark Andrews personally served Defendant Basil Plastiras with the summons and complaint on May 30, 2024.   (Dkt. No. 5 at 2.)  The Proof of Service also

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  represented the remaining Defendants—Michael Terrizzi, Parkway Properties 12 LLC, and
2  Plastiras & Terrizzi, APC—were also all served by leaving the summons and Complaint with Mr.
3  Plasitras. (*Id*. at 3-5.)
4        On June 21, 2024—exactly 22 days after service—Plaintiff moved for entry of default after
5  Defendants failed to appear. (Dkt. No. 6.) The Clerk entered Defendants' default on June 26,
6  2024. (Dkt. No. 7.) Just three calendar days later, Plaintiff moved for default judgment under
7  Federal Rule of Civil Procedure 55(b)(1), requesting the Clerk enter judgment in favor of Plaintiff
8  in the sum certain of $362,192.33 plus costs of $705. (Dkt. No. 10 at 3.) Less than a week later,
9  Defendants filed the now pending motion to set aside default. (Dkt. No. 12.) Mr. Plastiras
10 submitted a declaration in support of the motion to set aside attesting Plaintiff—not a process
11 server—personally served him with the summons and complaint and as an attorney he knew
12 service by a party was improper so he did not respond to the summons and complaint. (Dkt. No.
13 12-3 at ¶¶ 3-4.)
14       The Court subsequently heard argument on Defendants' motion to set aside and took
15 testimony from Mr. Cupp who testified he did not personally serve Mr. Plastiras. (Dkt. No. 17.)
16 The Court thus directed Mr. Plasitras to submit a further declaration. (Dkt. Nos. 17, 19.) Mr.
17 Plastiras did so, again attesting Mr. Cupp had personally served him. (Dkt. No. 20 at ¶¶ 3, 5.) The
18 Court thus set the matter for an in-person evidentiary hearing. (Dkt. No. 21.) At the September 5,
19 2024 evidentiary hearing, Mr. Cupp, Mr. Plastiras, and the process server, Mr. Andrews, testified.
20 (Dkt. Nos. 25, 26.)

**DISCUSSION**

22       The Court may set aside the entry of default upon a showing of "good cause." Fed. R. Civ.
23 P. 55(c). The Court's discretion to set aside entry of default "is especially broad where, as here, it
24 is entry of default that is being set aside, rather than a default judgment." *O'Connor v. State of*
25 *Nev*., 27 F.3d 357, 364 (9th Cir. 1994). A court considers three factors in determining whether
26 good cause exists: "(1) whether [the party seeking to set aside the default] engaged in culpable
27 conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether
28 reopening the default judgment would prejudice' the other party." *United States v. Signed*

1  *Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091–94 (9th Cir. 2010) (cleaned

2  up). "[A] finding that any one of these factors is true is sufficient reason for the district court to

3  refuse to set aside the default." *Id*. But, "judgment by default is an extreme measure and a case

4  should, whenever possible, be decided on the merits." *Community Dental Servs. v. Tani*, 282 F.3d

5  1164, 1170 (9th Cir. 2002) (cleaned up). Defendants insist there is good cause to set aside their

6  default because: (1) they were not properly served; (2) they have meritorious defenses; and (3)

7  reopening the action will not prejudice Plaintiff.

**A. Whether Defendants Engaged in Culpable Conduct**

"[W]ithout substantial compliance with Rule 4 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id*. (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986)).  Under Federal Rules of Civil Procedure 4(c)(2) and California Code of Civil Procedure section 414.10 service may not be made by a party to the action.  *See* Fed. R. Civ. P. 4(c)(2)("Any person who is at least 18 years old and not a party may serve a summons and complaint"); Cal. Code Civ. P. § 414.10 (same).  Further, service on an individual can only be made by (1) personally serving the individual; (2) leaving a copy at the individual's dwelling or usual place of abode with a suitable person; or (3) delivering a copy to their authorized agent. Fed. R. Civ. P. 4(e)(2).  Plaintiff bears the burden of proving service of process was proper. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Defendants contend their failure to timely respond to the complaint is not culpable conduct because service was improper given that Plaintiff—not Mr. Andrews—effectuated service, and Mr. Plastiras had no authority to accept service on behalf of Mr. Terrizzi.  The evidence in the record and offered at the evidentiary hearing on this issue is as follows.

Plaintiff's declaration in support of his request for entry of default attests: "I was present at the time and place of the service."  (Dk. No. 6 at ¶ 4.)   When Plaintiff emailed Mr. Plastiras a copy of his request for entry of default, Mr. Plastiras's response email stated:

> Ron: Do not add perjury to your list of felonies. You know that only you and I were present at the time of service in my office. YOU served me. No one else was present. You weren't just "present at the time of service", you personally served me. You may think I did not recognize you, but I did.

3

1   (Dkt. No. 15-2 at 4.) Plaintiff responded by email: "Sorry for your incorrect misunderstanding.

2   You were served by a Mark Andrews, a licensed process server, P524." (*Id*. at 3.) Mr. Plastiras

3   responded:

> That is not true. It took me a minute, but I recognized you, Ron.
>
> Even if a process server were present (and it was just you and I), where was he? Hiding around the corner. There was only one other person in my suite besides myself, but your sworn declaration says you too were "present".

7   (*Id*. at 2.) The declaration Plaintiff submitted in support of the subsequent motion for default

8   judgment attests "I had Mark Andrews follow me to the defendant's address for service, so I was

9   present." (Dkt. No. 10-1 at ¶ 3.)

10      Plaintiff has known Mark Andrews, the process server, for 20 years. (Dkt. No. 26, Cupp

11  Cross at 9:11-12.) Mr. Andrews' declaration in support of the motion for default judgment does

12  not indicate whether Mr. Cupp accompanied him into the building to serve Mr. Plastiras as Mr.

13  Cupp's attestation that he was "present at the time of service" suggests; instead, it states: "We got

14  out of our cars and Mr. Cupp showed me where in the building on the first floor, suite 150, the

15  defendants were located." (Dkt. No. 10-1 at ¶ 7.) Mr. Andrews further attests: "I took the

16  Complaint, Summons and other court documents and met a BASIL PLASTIRAS in his office at

17  suite 150." (*Id*. at ¶ 8.) Mr. Andrews then "informed him of my duties, and asked if he would

18  accept service for all the defendants. I presented him with the court papers, he reviewed them, and

19  said he would accept service." (*Id*. at ¶ 9.) On cross examination, Mr. Andrews testified Mr.

20  Cupp was "downstairs in his car waiting for me to come out" when he served Mr. Plastiras. (Dkt.

21  No. 26, Andrews Cross at 19:20-21.) So, there is conflict in the evidence between Mr. Cupp's

22  sworn statement he was "present at the time of service" and Mr. Andrew's testimony he did not

23  enter the office building.

24      Mr. Plastiras's declaration in support of the motion to set aside default attests: "On May

25  30, 2024, the Plaintiff in this matter, Ronald Cupp, personally appeared at my place of business…

26  At this time, the only individuals present in my office were Mr. Cupp and myself. To be very

27  clear, absolutely nobody else was present at any time during this exchange on May 30, 2024."

28  (Dkt. No. 12-3 at ¶ 3.) Mr. Plastiras testified "he knew right away it was Ron" who tried to serve

1   him and "because Ron served me, I knew immediately that a plaintiff cannot serve a lawsuit and it
2   would not be valid service." (Dkt. No. 26, Plastiras Direct at 20:20-25.)
3           However, on June 3, 2024—just four days after the purported service—Mr. Plastiras wrote
4   Plaintiff an email stating:

> From: Basil Plastiras <basil@ptlegal.com>
> Sent: Monday, June 3, 2024 3:29 PM
> To: ronc2009@gmail.com
> Subject: RE: CUPP V PARKWAY 24CV03241 - E DISCOVERY PRESERVATION LETTER 6-1-24
>
> Ron: This will document our phone call just now. Thank you for agreeing to dismiss Mike Terrizzi from this lawsuit. He retired in 2019, is disabled, and was never involved in this matter.
>
> I explained to you that I have been diagnosed with a medical condition that primarily affects my ability to recollect. Two years ago, I had no recollection whatsoever of your bankruptcy or discharge, and no records left to review. Therefor I filed a request to renew the Judgment, as I was unaware of any discharge. As I explained, I am retiring; I am down to 2 cases. We disposed of all of our closed files years ago, including your file, and I had no recollection of your bankruptcy filing in 2008 or thereafter until you raised it, and no recollection of your discharge until I reviewed your complaint containing the discharge I had requested.

(Dkt. No. 15-2 at 8.) The email does not mention anything about service being improper because Plaintiff personally served him, or otherwise indicate that Mr. Plastiras believed service was improper. Instead, the record reflects that it was not until Mr. Cupp told Mr. Plastiras he was moving for entry of default that Mr. Plastiras accused Mr. Cupp of having personally served the complaint. (*Id.* at 3-4.) Further, Mr. Plastiras stated in his first email accusing Mr. Cupp of having personally served the complaint that it took him "a minute" before he recognized the process server was Mr. Cupp, but in his declaration and at the evidentiary hearing he testified he "immediately" recognized Mr. Cupp. (*Compare* Dkt. No. 15-2 at 2 (email) *with* Dkt. No. 26, Plastiras Direct at 20:20-25 (testimony).) So, there are also inconsistencies in Mr. Plastiras' evidence.

        The Court need not resolve this factual dispute because, regardless, it finds Defendants did not act culpably. The June 3 email suggests Mr. Plastiras likely thought the issue resolved because he told Plaintiff he would proceed to "record whatever documents are necessary to withdraw the judgment lien." (Dkt. No. 15-2 at 8.) Or, Mr. Plastiras genuinely believed service was improper. And, in any event, it is unreasonable for a plaintiff to run into court and obtain entry of default on the first available date, especially where, as here, the plaintiff is in communication with the defendants and could have easily advised the defendants in advance of his

5

intent to move for entry of default. Federal court litigation is not a game of "gotcha."

### B. Meritorious Defense

"All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094 (internal citation omitted).  Here, Defendants have submitted their proposed answer setting forth their contentions and defenses regarding Plaintiffs' claims.  (Dkt. No. 12-2 at 4.)  Defendants have advanced an alternative explanation for the debt collection activities Plaintiff challenges that is sufficient for purposes of the motion to set aside default. *Mesle*, 615 F.3d at 1094 ("the question whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default. Rather, that question would be the subject of the later litigation.")

### C. Prejudice to Plaintiff

Finally, because this case in its earliest stages—Plaintiff moved for entry of default the day after Defendants' answer was due—there is no prejudice to Plaintiff in setting aside the default. *See Mesle*, 615 F.3d at 1095 ("To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case.") (internal citation omitted).

\*\*\*

Accordingly, the Court concludes there is good cause to set aside Defendants' default.

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion to set aside Defendants' default.  Defendants shall file their response to the complaint by October 10, 2024.

The Court sets an initial case management conference for November 7, 2024 at 1:30 p.m. via Zoom video.  A joint case management conference statement is due November 1, 2024.

**IT IS SO ORDERED.**

Dated: September 23, 2024

JACQUELINE SCOTT CORLEY
United States District Judge